BARRACK, RODOS & BACINE
Mark R. Rosen
Chad A. Carder
Julie B. Palley
One Gateway Center, Suite 2600
Newark, NJ 07102
Phone: (973) 297-1484

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ALAN D. FURMAN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CAPE BANCORP, INC., MICHAEL D. DEVLIN | : | |
| AGOSTINO R. FABIETTI, FRANK J. GLASER, | : | |
| DAVID C. INGERSOLL, JR., MATTHEW J. | : | |
| REYNOLDS, THOMAS K. RITTER, ROY | : | **CIVIL ACTION NO. _____** |
| GOLDBERG, JAMES F. DEUTSCH, GREGORY | : | |
| J. FACEMYER, BENJAMIN D. GOLDMAN, | : | |
| HUGH J. McCAFFREY, ALTHEA L.A. | : | |
| SKEELS, and OCEANFIRST FINANCIAL | : | |
| CORPORATION, | : | |
| | : | |
| Defendants. | : | JURY TRIAL DEMANDED |
| | : | |

## VERIFIED COMPLAINT

## LOCAL CIVIL RULE 10.1 STATEMENT

1.      The mailing addresses of the parties to this action are:

Alan D. Furman
233 Knight Dr.
San Rafael, CA 94901

Cape Bancorp Inc.
225 North Main Street
Cape May Court House, NJ 08210

Michael D. Devlin
c/o Cape Bancorp Inc.
225 North Main Street
Cape May Court House, NJ 08210

Agostino R. Fabietti
c/o Cape Bancorp Inc.
225 North Main Street
Cape May Court House, NJ 08210

Frank J. Glaser
c/o Cape Bancorp Inc.
225 North Main Street
Cape May Court House, NJ 08210

David C. Ingersoll, Jr.
c/o Cape Bancorp Inc.
225 North Main Street
Cape May Court House, NJ 08210

Matthew J. Reynolds
c/o Cape Bancorp Inc.
225 North Main Street
Cape May Court House, NJ 08210

Thomas K. Ritter
c/o Cape Bancorp Inc.
225 North Main Street
Cape May Court House, NJ 08210

Roy Goldberg
c/o Cape Bancorp Inc.
225 North Main Street
Cape May Court House, NJ 08210

James F. Deutsch
c/o Cape Bancorp Inc.
225 North Main Street
Cape May Court House, NJ 08210

Gregory J. Facemyer
c/o Cape Bancorp Inc.
225 North Main Street
Cape May Court House, NJ 08210

Benjamin D. Goldman
c/o Cape Bancorp Inc.
225 North Main Street
Cape May Court House, NJ 08210

Hugh J. McCaffrey
c/o Cape Bancorp Inc.
225 North Main Street
Cape May Court House, NJ 08210

Althea L.A. Skeels
c/o Cape Bancorp Inc.
225 North Main Street
Cape May Court House, NJ 08210

OceanFirst Financial Corp.
975 Hooper Avenue
Toms River, NJ 08753

## INTRODUCTION

2.    Plaintiff Alan D. Furman ("Plaintiff"), by his attorneys, brings this action to enjoin the proposed acquisition of Cape Bancorp, Inc. ("Cape Bancorp" or "the Company") by OceanFirst Financial Corporation ("OceanFirst"), through OceanFirst's wholly-owned subsidiary Justice Merger Sub Corp. ("Merger Sub"), as detailed herein (the "Proposed Acquisition" or "Merger"), for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9.

3.    Cape Bancorp has $1.6 billion in total assets, $1.3 billion in total deposits and $1.1 billion in gross loans.  It operates 22 full-service retail branches in Southern New Jersey and five loan offices, including two in the Philadelphia metropolitan area.  The Company was founded in 1923 and is one of Southern New Jersey's largest community banks.

4.      OceanFirst is a New Jersey-based community bank with approximately $2.6 billion in deposits and 27 retail locations in Ocean, Monmouth and Middlesex counties, New Jersey.  OceanFirst Bank was founded in 1902.  OceanFirst Bank delivers commercial and residential financing solutions, wealth management, and deposit services throughout the central New Jersey region and is the largest and oldest community-based financial institution headquartered in Ocean County, New Jersey.

5.      On January 6, 2016, the Cape Bancorp Board announced that it had agreed to enter into an Agreement and Plan of Merger (the "Merger Agreement") with OceanFirst and Merger Sub, pursuant to which: (i) Merger Sub will merge with and into Cape Bancorp, with the Company continuing as the surviving corporation in the first-step merger and as a wholly-owned subsidiary of OceanFirst; (ii) immediately following the completion of the first-step merger, the Company will merge with and into OceanFirst, with OceanFirst continuing as the surviving corporation in the second-step merger; and (iii) immediately following the completion of the integrated mergers, the Company will merge with and into OceanFirst Bank, a wholly owned bank subsidiary of OceanFirst, with OceanFirst Bank continuing as the surviving bank in the bank merger.

6.       Pursuant to the terms of the Merger Agreement, shareholders of Cape Bancorp will receive $2.25 in cash and 0.6375 shares of OceanFirst common stock for each share they own ("Merger Consideration").  At the time the Proposed Acquisition was announced, Defendants represented that it had a total value of approximately $208.1 million to Cape Bancorp shareholders, based upon the stock price of OceanFirst on the date preceding the announcement.  Defendants further represented that the Proposed Acquisition was worth approximately $15 per share to Cape Bancorp shareholders, which they represented was a 21%

premium to the stock's market price the day before the announcement of the Proposed Acquisition. The vote on the Proposed Acquisition is scheduled for April 25, 2016, at a special meeting of Cape Bancorp shareholders.

7.     As described below, both the value to Cape Bancorp shareholders contemplated in the Proposed Transaction and the process by which Defendants propose to consummate the Merger appear to be fundamentally unfair to Plaintiff.

8.     Importantly, there is no protective "collar" on the exchange ratio portion of the Merger Consideration meaning that there is no guarantee that Cape Bancorp stockholders will receive the estimated $15 per share consideration. Because the price of OceanFirst's stock is now trading below its price at the time of the announcement of the Proposed Acquisition, the per share value of the Proposed Transaction to Cape Bancorp shareholders is now only $13.38 per share, which is less than a 10% premium compared to Cape Bancorp's pre-announcement share price of $12.39. And, without a "collar," the total value, per share value, and deal premium could fall even lower if the market price of OceanFirst shares further declines before the deal is consummated.

9.     Compounding the apparent failure to provide adequate consideration, the Cape Bancorp Board agreed to terms that will likely serve to lock up the Proposed Acquisition. Specifically, the preclusive deal protection devices in the Merger Agreement will deter other bidders from making successful offers for the Company. For example, pursuant to the Merger Agreement, the Board agreed to a "no-solicitation" provision prohibiting the Company from shopping itself and a termination fee of $7.2 million. These provisions improperly limit the Board's ability to act with respect to investigating and pursuing superior proposals and alternatives to the Proposed Acquisition.

10.     Even more germane to this action, Defendants have issued materially incomplete and misleading disclosures in the Schedule 14A (the "Proxy") filed with the SEC on March 17, 2016, which seeks shareholder approval of the Proposed Acquisition and recommends that the Company's shareholders vote in favor of the Proposed Acquisition.  The Proxy is deficient and misleading in that it fails to provide adequate disclosure of all material information related to the Proposed Acquisition.

11.     For these reasons and others described below, the Proposed Acquisition should be enjoined and the Board should be required to file an amended proxy that fully complies with all disclosure obligations before allowing OceanFirst or any other corporate buyer to acquire the Company.

## JURISDICTION

12.     This Court has subject matter jurisdiction over this action for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 pursuant to Section 27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. § 1331.

13.      This Court has personal jurisdiction over all defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

14.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because both the Company's and OceanFirst's corporate headquarters and principal places of business are located in New Jersey and each of the individual defendants has served as a director of the New Jersey-based Company and participated in the business of the Company by their actions taken within or directed to this District and the wrongful acts alleged herein took place and/or were initiated by Defendants in this District.

## PARTIES

15.     Plaintiff is a citizen of the State of California and a stockholder of Cape Bancorp, and has been a stockholder of Cape Bancorp at all material times alleged in this Complaint.

16.     Defendant Cape Bancorp is a corporation that was founded in 1923 and its corporate headquarters and principal place of business are located at 225 North Main Street, Cape May Court House, NJ 08210.  Cape Bancorp operates as a holding company for the Cape Bank that provides various business and personal banking products to individuals and businesses in New Jersey. Cape Bank provides its banking products and services through 14 full service offices in southern New Jersey, 3 market development offices ("MDOs") located in New Jersey; and 2 MDOs in Pennsylvania. It accepts various deposit products, such as non-interest-bearing demand deposits, including checking accounts; interest-bearing checking accounts and money market accounts; savings accounts; and certificates of deposit.  The Company also offers various loan products comprising commercial mortgage loans, one-to-four family residential mortgage loans, commercial business loans, construction loans, home equity loans and lines of credit products, and other consumer loans.  Cape Bancorp is incorporated in Maryland.

17.     Defendant Michael D. Devlin is a citizen of the State of New Jersey and is the Chief Executive Officer of Cape Bancorp, as well as Chairman of the Board.  He has served as a director since 2008 and CEO since 2009.  He was the Company's Executive Vice President/Chief Operating Officer from 2008, having served as the chairman, president and chief executive of Boardwalk Bancorp., Inc. and Boardwalk Bank since 1999, until the merger with Cape Bancorp.  He is also a member of the Enterprise Risk Management Committee of the Board.

18.    Defendant Agostino R. Fabietti is a citizen of the State of New Jersey and has served as a director of the Company since 2008, having previously served as a director of Boardwalk Bancorp, Inc. and Boardwalk Bank since 1999.  He is also a member of the Audit, Enterprise Risk Management and Nominating & Corporate Governance Committees of the Board.

19.    Defendant Frank J. Glaser is a citizen of the State of New Jersey and has been a director of the Company since 2006.  He is also a member of the Compensation Committee and the Nominating and Corporate Governance Committee of the Board.

20.    Defendant David C. Ingersoll, Jr. is a citizen of the State of New Jersey and has served as a director of the Company since 1977.  He is a member of the Audit Committee and the Enterprise Risk Management Committee of the Board.

21.    Defendant Matthew J. Reynolds is a citizen of the State of New Jersey and has served as a director of the Company since 2004.  Defendant Reynolds chairs the Compensation Committee and is a member of the Audit Committee of the Board.

22.    Defendant Thomas K. Ritter is a citizen of the State of New Jersey and has served as a director of the Company since 2008, having previously served as a director of Boardwalk Bancorp and Boardwalk Bank since 1999.  He is a member of the Audit and Compensation Committees of the Board.

23.    Defendant Roy Goldberg is a citizen of the State of New Jersey and has served as a director of the Company since 2010, having previously served as a director of Boardwalk Bancorp and Boardwalk Bank since 1999.  He is a member of the Audit Committee, the Enterprise Risk Management Committee and the Nominating & Corporate Governance Committee.

24.     Defendant James F. Deutsch is a citizen of the State of New Jersey and has served as a director of the Company since 2015.  He is a member of the Enterprise Risk Management Committee and the Nominating & Corporate Governance Committee of the Board.

25.     Defendant Gregory J. Facemyer is a citizen of the State of New Jersey and has served as a director of the Company since 2015, as a result of the merger between Cape Bancorp and Colonial Financial Services, having previously served as a director at Colonial.  He is a member of the Audit Committee and the Enterprise Risk Management Committee of the Board.

26.     Defendant Benjamin D. Goldman is a citizen of the State of Florida and has served as a director of  the Company since 2012.   He is a member of the Compensation Committee and the Nominating and Corporate Governance Committee of the Board.

27.     Defendant Hugh J. McCaffrey is a citizen of the State of New Jersey and has served as a director of the Company since 2015, as a result of the merger between Cape Bancorp and Colonial Financial Services, having previously served as a Director of Colonial.  He is a member of the Compensation Committee of the Board.

28.     Defendant Althea L.A. Skeels is a citizen of State of New Jersey and has served as a director of the Company since 2012.  She is a member of the Compensation, Enterprise Risk Management and Nominating & Corporate Governance Committees of the Board.

29.     Defendants Fabietti, Glaser, Ingersoll, Reynolds Ritter, Goldberg, Deutsch, Facemyer, Goldman, McCaffrey, and Skeels are referred to herein as the "Cape Bancorp Directors," the "Board," or the "Individual Defendants."  Each of the Cape Bancorp Directors was a member of the Board of Cape Bancorp at all relevant times and participated in the decisions challenged below.

30.     Defendant OceanFirst operates as the bank holding company for OceanFirst Bank.  OceanFirst's corporate headquarters and principal place of business are located at 975 Hooper Avenue, Toms River, NJ 08753.  OceanFirst Bank provides a host of community banking services to retail, government and business customers.  The company was founded in 1902 and operates throughout New Jersey.

## FACTUAL ALLEGATIONS

### THE ANNOUNCEMENT OF THE PROPOSED ACQUISITION

31.     On January 6, 2016, OceanFirst and Cape Bancorp jointly announced that on January 5, 2016 they had entered into the Merger Agreement pursuant to which OceanFirst would acquire Cape Bancorp in a cash and stock deal purportedly valuing the Company at $208.1 million.  Pursuant to the terms of the Merger Agreement, which was unanimously approved by the boards of both companies, Cape Bancorp stockholders will receive $2.25 per share in cash and 0.6375 shares of OceanFirst.  The votes by Cape Bancorp and OceanFirst shareholders on the Merger Agreement are currently set for April 25, 2016.

32.     Assuming the Proposed Acquisition is consummated, Cape Bank, a New Jersey-chartered savings bank, will merge with and into OceanFirst Bank, a federal savings bank, with OceanFirst Bank as the surviving bank.  Pursuant to the terms of the Merger Agreement, Michael D. Devlin, President and Chief Executive Officer of the Company, will be appointed to the boards of directors of OceanFirst and OceanFirst Bank following the close of the Proposed Acquisition.  OceanFirst stated that it expects to incur pre-tax merger and integration costs of approximately $15.5 million and to achieve cost synergies totaling approximately 33% of Cape Bancorp's non-interest expenses or $12.2 million per year once fully phased-in.  Further, assuming the Proposed Acquisition is completed, it will enhance OceanFirst's distribution, scale

and core deposit funding base, creating the largest New Jersey headquartered bank operating in Central and Southern New Jersey.  At closing, the combined institution is expected to have approximately $4.3 billion in total assets, $3.4 billion in total deposits, $3.2 billion in gross loans and 49 full-service banking locations.

33.     At the time the Proposed Acquisition was announced, the Merger Consideration was approximately $15 per share, which represented a 21% premium to the pre-announcement closing price of Cape Bancorp stock.

34.     However, OceanFirst shares dropped 4.6% on news of the acquisition and it is still trading below its price before the time of the announcement. Thus, the value of the Proposed Acquisition, as currently constituted, would be significantly less to Cape Bancorp shareholders than at the time it was announced.

35.     While Defendants claim that the cash and stock consideration amounts to Merger Consideration of $15 per share, that claim is illusory.  The $15 Merger Consideration is based on OceanFirst's closing before the announcement of the Proposed Acquisition.  There is no protective "collar" on the stock ratio and no guarantee that Cape Bancorp stockholders will receive such consideration.  Such a "collar" would have protected Cape Bancorp stockholders from downside movement in OceanFirst's stock.  Indeed, shares of OceanFirst have fallen over 10 percent since the beginning of the year.  Accordingly, whereas the Proposed Acquisition was announced as providing a $15 per share value to Cape Bancorp stockholders and a 21% premium to Cape Bancorp's then-current stock price, the value of the deal consideration as of March 23, 2016, was only $13.38 per Cape Bancorp share, which is less than a 10% premium compared to Cape Bancorp's pre-announcement share price of $12.39.   The reasons for the failure to

negotiate a price "collar," or to explain whether one was even considered, is not disclosed in the Proxy.

36.     Moreover, leading up to the announcement of the Proposed Acquisition, Cape Bancorp had shown good performance.  Cape Bancorp's share price performance of 52.33% over the prior 12 months was above its peer median of 22.28%.  This further demonstrates the materiality of the Directors' failure to disclose (a) whether they had conducted an auction for the sale of the Company or (b) whether they had considered or attempted to secure a price "collar" to protect the value Cape Bancorp stockholders would receive for their shares in the Proposed Acquisition.

37.     Insiders and majority holders of Cape Bancorp collectively own 26.5% of the Company's outstanding stock, which they have pledged in support of the Proposed Acquisition. Simultaneously with the execution of the Merger Agreement, OceanFirst entered into separate voting agreements with certain Cape Bancorp stockholders, including the Directors and certain executive officers of the Company, as well as some other Cape Bancorp stockholders. As of the record date, these stockholders beneficially owned and were entitled to vote, in the aggregate, 2,245,863 shares of the Cape Bancorp common stock, allowing them to exercise approximately 16.58% of the voting power.

38.     Pursuant to the voting agreements, the stockholders agreed, among other things, to vote their shares of Cape Bancorp common stock in favor of the Proposed Acquisition. Additionally, pursuant to the voting agreements, these stockholders have agreed to vote against any alternate or competing proposal without regard to any recommendation to Cape Bancorp shareholders by the Board of Directors of the Company concerning an alternate proposal. Section 2 of the voting agreement also contains a non-solicitation clause, which prevents the

shareholders signing the agreement from, *inter alia*, soliciting, initiating, encouraging or knowingly facilitating any inquiries, proposals or offers which may lead to an alternate proposal or approving or recommending an alternate proposal. The provisions signed by at least certain Cape Bancorp Board members and executives will further serve to deter other potential bidders from making an alternate proposal.

39.    The financial advisers involved in the Proposed Acquisition also present conflicts that further call into question the *bona fides* of the actions taken by Defendants.  The Cape Bancorp Board's financial adviser, Raymond James & Associates, Inc. ("Raymond James") rendered a "Fairness Opinion" (defined below) in support of the Proposed Acquisition.  Yet, its fee is highly contingent on the completion of the deal, which raises a question as to whether the adviser sought out a deal that would maximize value for Cape Bancorp shareholders rather than a deal that, although worse for Cape Bancorp shareholders, would have a better chance of being put in place.

40.    Sandler O'Neill + Partners, L.P. ("Sandler O'Neill") served as financial adviser to OceanFirst.  However, Sandler O'Neill was also the only financial analyst to provide coverage of Cape Bancorp and OceanFirst, thereby raising a conflict because if the Cape Bancorp Board did not approve a deal with OceanFirst (which would harm Sandler O'Neill's own financial interests), Sandler O'Neill could have threatened to harm Cape Bancorp by withdrawing its coverage of Cape Bancorp.

### INADEQUATE DISCLOSURES IN THE PROXY RENDER IT MATERIALLY MISLEADING

41.    On March 17, 2016, Defendants filed the Proxy with the SEC.  The Proxy fails to disclose material information necessary to make the statements therein not misleading and also

necessary for a reasonable shareholder to make an informed vote regarding the Proposed Acquisition.

42.     Specifically, as set forth below, the Proxy fails to provide Cape Bancorp shareholders with material information and/or provides them with materially misleading information concerning: (i) whether the Company considered requiring a price "collar" to protect the value of the Proposed Acquisition if, as it turned out to be the case, the value of the stock of the proposed acquirer, OceanFirst, declined before the consummation of the Proposed Acquisition; (ii) whether there were any negotiations concerning a price "collar" with OceanFirst and, if so, why Defendants did not insist upon a price "collar" that would have preserved the value of the Proposed Transaction in face of the volatility of stock prices; (iii) the valuation of the offer in the Fairness Opinion provided by Raymond James; and (iv) the conflicts that, if disclosed, would call into question the *bona fides* of the Proposed Acquisition, including the conflicting interests of the financial advisers.

43.     The Background of the Transaction section of the Proxy omits material information.  For example, this section notes that during an execution session held before a regular meeting of the Board on August 17, 2015, a discussion occurred concerning merger and acquisition activity in the Company's regional market and the implications for Cape Bancorp's strategic plan.  Specifically, the Proxy states the "executive session included a discussion concerning Cape's market value as an ongoing entity, as well as an acquisition target. Two likely acquirers were noted, one of which was OceanFirst, and the Cape board discussed the relative merits of both potential acquirers."  However, the Proxy fails to identify the reasons this acquirer was not pursued.  It further fails to explain what Cape Bancorp's strategic plan was, the

particulars of the merger and acquisition activity in the Company's regional market, and how that activity would have impacted Cape Bancorp's strategic plan

44.     The Proxy also fails to disclose the details discussed regarding the "execution risk associated with [the Company's] business plan, and the implications of a highly competitive market on its potential growth and market value." Without these details, it is impossible for a stockholder to assess whether the Company should have remained as a standalone company or whether the Proposed Transaction with OceanFirst was a better alternative.

45.     The Proxy also reveals that Raymond James had discussions with three entities identified as Companies A, B and C but fails to disclose any details regarding these companies or the substance of such discussions.

46.     The Proxy mentions that a Cape Bancorp strategic alternatives committee was formed, but fails to reveal the identity of the members of such committee. Without this information, Cape Bancorp stockholders cannot assess the independence of this committee and their ability to make informed and fair decisions regarding a sale of the Company.

47.     The Proxy contains a written fairness opinion, dated January 5, 2016, by the Company's financial advisor, Raymond James (the "Fairness Opinion"). The Fairness Opinion states that "as of the date of the opinion, and based upon and subject to the factors and assumptions set forth in the opinion, the merger consideration in the first-step merger was fair, from a financial point of view, to Cape stockholders." It is further purported to be based on a series of calculations to determine the fairness of the Proposed Acquisition to the Company's shareholders. These calculations include a "Selected Companies Analysis," a "Selected Transaction Analysis," and a "Discounted Cash Flow Analysis."

48.     However, the Proxy omits necessary information material to stockholders so they can understand the reliability of the Fairness Opinion, as follows.

49.     Raymond James' Selected Companies Analysis compares the price offered for Cape Bancorp to certain financial metrics from a selection of regional banks.  Raymond James selected banks with Core ROAA [return on average assets] between 0.40% and 1.05%.  However, the Proxy fails to define that term.  In addition, Raymond James selected banks with nonperforming assets ("NPA") less than 4%.  Cape Bancorp's NPA as a percentage of total assets was 0.9%.  Only six of the 19 banks selected had NPA as percentage of total assets above 1%, and those six ranged from 1.2% to 2.8%.  Raymond James fails to disclose why it included such a broad range of NPA up to 4% in its search criteria.  Moreover, given the wide disparity of the six banks, it should have, but failed to disclose the financial metrics for each of the banks, namely: assets, ROAA, and NPA, as well as the multiples Price/Tangible Book Value ("Price/TBV"), Price/Latest Twelve Months Core Earnings ("Price/LTM"), and Price/Calendar Year 2016 earnings per share ("Price/CY2016 EPS").  The failure to provide this information precludes shareholders from assessing if price multiples are higher for better quality banks and from determining if the Selected Companies Analysis supports the fairness of the Proposed Transaction, thereby rendering the Proxy materially misleading.

50.     Raymond James' Selected Transaction Analysis compares the price offered for Cape Bancorp to financial metrics including Price/Most Recent Quarter (MRQ) TBV; Transaction Value (TV)/LTM Core Earnings; and Premium to Core Deposits for a selection of regional bank transactions and national bank transactions.  The Proxy fails to explain why five of the regional bank transactions were also included in the national bank transactions.  In addition, the Proxy fails to state whether duplicates were eliminated prior to the summarization of the deal

values.  The failure to provide this information prevents shareholders from determining if the

Selected Transaction Analysis supports the fairness of the Proposed Transaction, thereby

rendering the Proxy materially misleading.

51.    Raymond James' Selected Transaction Analysis also stated that Raymond James

considered transactions involving banks with an NPA as high as four percent (4%), even though

Cape Bancorp's NPA was less than one percent (1%).  By failing to disclose whether lower

multiples were paid for banks with lower asset quality, as reflected in higher NPAs that range as

high as four percent, the disclosure prevents shareholders from determining if the Selected

Transaction Analysis supports the fairness of the Proposed Transaction, thereby rendering the

Proxy materially misleading.

52.    Raymond James' Discounted Cash Flow Analysis used projected free cash flow

derived from projections for the quarter ending March 31, 2016 through December 31, 2020.

However, and critically, the Proxy fails to disclose those projections in the Proxy.  This – all by

itself – renders the Proxy materially incomplete and prevents shareholders from determining if

the Discounted Cash Flow Analysis supports the fairness of the Proposed Transaction.

53.    In addition, it appears that the vast majority of the value derived from the

Discounted Cash Flow Analysis is from the present value of the terminal value, and Raymond

James computed the terminal value using net income multiples of 13-16x 2020 net income.  The

Proxy fails to disclose whether these values were derived from the Selected Companies Analysis,

and whether they were based upon the valuation of minority interest values and not control of the

corporation.  As a result, the Proxy fails to disclose the present value of the free cash flows

during the projection period separate from the present value of the terminal value.  This

information would inform Cape Bancorp shareholders as to the sensitivity of the concluded value

to the selection of the terminal value multiples.  It also fails to describe how the multiple range was selected or provide any support for the discount rates of 12-15%.  By failing to provide all of this information concerning the Discounted Cash Flow Analysis, the Proxy prevents shareholders from determining if the Discounted Cash Flow Analysis supports the fairness of the Proposed Transaction, thereby rendering the Proxy materially misleading.

54.     Plaintiff has no adequate remedy at law.

## CLAIMS FOR RELIEF

### COUNT I

**Violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9
(Against All Defendants)**

55.     Plaintiff repeats and realleges each and every allegation above as if set forth in full herein.

56.     During the relevant period, Defendants disseminated the false and misleading Proxy described above, which failed to disclose material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9.

57.     By virtue of their positions, each of their Defendants were aware of this information and of the duty to disclose it in the Proxy.  The Proxy was prepared, reviewed, and/or disseminated by all of the Defendants.  It misrepresented and/or omitted material facts, including material information about: (i) whether the Company considered requiring a price "collar" to protect the value of the Proposed Acquisition if, as it turned out to be the case, the value of the stock of the proposed acquirer, OceanFirst, declined before the consummation of the Proposed Acquisition; (ii) whether there were any negotiations concerning a price "collar" with OceanFirst and, if so, why Defendants did not insist upon a price "collar" that would have

18

preserved the value of the Proposed Transaction in face of the volatility of stock prices; (iii) the valuation of the offer in the Fairness Opinion provided by Raymond James; and (iv) the conflicts that, if disclosed, would call into question the bona fides of the Proposed Acquisition, including the conflicting interests of the financial advisers.  Defendants were, at the least, negligent in filing or causing to be filed the Proxy with these materially false and misleading statements and omissions.

59.    By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9.

58.    The omissions and false and misleading statements in the Proxy are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Acquisition.  In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Proxy and in other information reasonably available to shareholders.

60.    Because of the false and misleading statements in, and omissions from, the Proxy, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relieve is appropriate to ensure Defendants' misconduct is corrected.

## COUNT II

### Violation of Section 20(a) of the Exchange Act
### (Against the Individual Defendants)

61.    Plaintiff repeats and realleges each and every allegation above as if set forth in full herein.

62.    The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act.  By virtue of their positions as an officer and/or directors of Cape Bancorp and participation in and/or awareness of the Company's

operations and/or intimate knowledge of the false and misleading statements contained in (and omissions from) the Proxy filed with the SEC, they had power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the Proxy which plaintiff contends is materially false and misleading.

63.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy alleged by Plaintiff to be misleading prior to and/or shortly after it was issued and had the ability to prevent the issuance of the Proxy or cause the statements contained therein to be corrected.

64.    In particular, as directors of the Company, each of the Individual Defendants had direct and supervisory involvement in the operations of Cape Bancorp and, therefore, is presumed to have had the power to control or influence the particular transaction giving rise to the securities violations alleged herein, and exercised the same.  The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Acquisition.  They were, thus, directly involved in the making of the Proxy.

65.    By virtue of the foregoing, the Individual Defendants have violated §20(a) of the Exchange Act.  The Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated §14(a) and SEC Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to §20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, plaintiff will be irreparably harmed.

## JURY TRIAL DEMANDED

66.    Plaintiff hereby demands a trial by jury on all issues so triable.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands judgment as follows:

(a)    Preliminarily and permanently enjoining Cape Bancorp, OceanFirst and Cape Bancorp's Directors and any and all other employees, agents, or representatives of the Company and persons acting in concert with any one or more of any of the foregoing, during the pendency of this action, from taking any action to consummate the Proposed Acquisition until such time as they have caused the Company to issue a corrected Proxy that fully complies with all of their disclosure obligations;

(b)    Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

(c)    Awarding such additional or different relief as the interests of justice or equity may require.

Dated:  March 28, 2016                    BARRACK RODOS & BACINE

                                          /s/ Mark R. Rosen
                                          Mark R. Rosen
                                          Chad A. Carder
                                          Julie B. Palley
                                          One Gateway Center, Suite 2600
                                          Newark, NJ 07102
                                          Phone: (973) 297-1484

                                               - and -

                                          BARRACK, RODOS & BACINE
                                          Daniel E. Bacine
                                          3300 Two Commerce Square
                                          2001 Market Street
                                          Philadelphia, PA 19103
                                          Phone:  (215) 963-0600

                                          *Attorneys for Plaintiff*